NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCIS X. APICELLA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>DG3 NORTH AMERICA, INC. & STEVEN BABAT,<br><br>　　　　　Defendants. | No. 24cv4474 (EP) (JSA)<br><br>OPINION |

**PADIN, District Judge.**

　　　Pro se Plaintiff Francis X. Apicella ("Plaintiff" or "Apicella") alleges that Defendants DG3 North America, Inc. ("DG3") and Steven Babat ("Babat") violated the Fair Labor Standards Act ("FLSA"),[1] the New Jersey State Wage and Hour Law ("NJWHL"),[2] and unspecified New Jersey common law[3] by not making timely payments owed to him for his work for DG3.  D.E. 1 ("Complaint" or "Compl.").  Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  D.E. 8-2 ("Mot.").  The Court decides the motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78(b).  For the reasons set forth below, Defendants' motion to dismiss will be **GRANTED** and the Complaint will be **DISMISSED** *without prejudice*.

---

[1] 29 U.S.C. § 201, *et seq.*
[2] N.J. Stat. Ann. § 34:11-56a1, *et seq.*
[3] Plaintiff's common law claims appear to sound in breach of contract.

I.      BACKGROUND

      A.      Factual Background[4]

On January 13, 2016, Plaintiff entered into a consulting agreement with DG3 as an independent contractor. Compl. ¶ 13; D.E. 8-1, Ex. A (the "Agreement").[5] The goal of the Agreement was for Plaintiff to introduce prospective clients he knew from "many years of working in the printing industry" to DG3 so that DG3 could demonstrate its software capabilities to those prospective clients. Compl. ¶¶ 13-14; Agreement § 3.

The Agreement required DG3 to pay Plaintiff non-recoverable bi-weekly "draw" payments of $70,000 in advance of commissions accrued on sales and due to Plaintiff. Compl. ¶ 25; Agreement § 4(a). However, in March 2018, Babat, DG3's President and CEO, spoke with Plaintiff over the phone and notified him that DG3 would no longer make the "draw" payments. Compl. ¶ 25. Plaintiff alleges that this breached the Agreement resulting in its termination, and that, from that point on, Plaintiff became an employee of DG3. *Id.* ¶¶ 25-26.

Although difficult to discern from the Complaint, it appears Plaintiff continued work for DG3 pursuant to a verbal agreement but alleges that he was not timely paid commissions due to him following the call with Babat. *See generally id.* ¶¶ 30-39. Plaintiff also alleges that DG3 breached the Agreement by not reimbursing him for mobile phone service, but that he already recovered that amount due to him through a New Jersey state court action. *Id.* ¶¶ 23, 31.

The first such delay in payment was resolved on June 15, 2022, when DG3 paid Plaintiff the money owed to him in the amount of $12,105.46. *Id.* ¶ 35. Then, on July 14, 2022, DG3's

---

[4] Except as otherwise noted, the facts in this section are taken from the well-pled factual allegations in the Complaint, which the Court presumes to be true for purposes of resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] Because the Agreement is specifically incorporated by reference into the Complaint, the Court may consider it in deciding a Rule 12(b)(6) motion. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Controller sent Plaintiff his commissions statement for the six-month period ending June 30, 2022, showing $4,500 in commissions due to Plaintiff, which Plaintiff promptly approved that same evening. *Id.* ¶¶ 36, 38. Plaintiff expected to be paid by July 18, 2022, but was told by DG3's controller that payment would be delayed until July 20. *Id.* ¶ 39.

Babat then asked Plaintiff to communicate only with him regarding Plaintiff's commission payments. *Id.* ¶ 40. On July 18, 2022, Plaintiff called Babat and emphasized the importance of receiving timely payments. *Id.* ¶¶ 41-42. However, on that call, Babat "was hostile" and "bullied" Plaintiff, telling Plaintiff that Babat was "done" and terminated Plaintiff's relationship with DG3. *Id.* ¶ 43. Babat followed that call with an email, confirming the end of Plaintiff's relationship with DG3 and that Plaintiff would no longer have access to DG3 email. *Id.* ¶ 45. Babat then instructed DG3's sales director to call Plaintiff's clients and let them know that Plaintiff was no longer associated with DG3. *Id.* ¶ 47. Plaintiff alleges this call was a "deliberate and preconceived plan to steal Plaintiff's business" so that DG3 would no longer have to pay him commissions. *Id.* ¶ 48.

Following the July 18 call, Plaintiff hired an attorney to send DG3 a demand letter for money still owed to him. *Id.* ¶ 50. Following receipt of the letter from Plaintiff's attorney, DG3 paid Plaintiff the money owed to him as of July 18, 2022 "without delay." *Id.* ¶ 52.

B. **Procedural Background**

Plaintiff now sues Defendants for allegedly violating the FLSA, NJWHL, and unspecified New Jersey common law. Compl. Plaintiff filed his Complaint on April 2, 2024. *Id.* Defendants moved to dismiss the Complaint on May 20, 2024 for failure to state a claim under Rule 12(b)(6). Mot. Plaintiff opposes. D.E. 9 ("Opp'n"). Defendants reply. D.E. 10 ("Reply"). Plaintiff submitted an unauthorized sur-reply. D.E. 11 ("Sur-reply").[6]

---

[6] Even if the Court had permitted the sur-reply, Local Rule 7.1(d)(6), it would not change the outcome.

3

II.  **LEGAL STANDARD**

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss for failure to state a claim, the reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230.

Because Plaintiff proceeds *pro se*, the Court construes the Complaint liberally and holds it to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

III.  **ANALYSIS**

A.  **Plaintiff Fails to State a FLSA Claim**

Defendants argue that Plaintiff fails to plead that he is an "employee" under the FLSA.  The Court agrees.  The FLSA only applies to employees of covered employers—not to independent contractors. *See Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir.

4

1985). However, "Congress and the courts have both recognized that, of all the acts of social legislation, the [FLSA] has the broadest definition of 'employee.'" *Id.*

The Third Circuit has adopted a six-factor test to determine whether a worker is an "employee" under the FLSA:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered required a special skill; 5) the degree of permanence of the working relationship; [and] 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* (quoting *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981)). In determining whether a worker is an "employee" under the FLSA, courts should consider the full circumstances of the worker's activities as well as "whether, as a matter of economic reality, the [worker is] 'dependent upon the business to which they render service'" rather than any one particular factor. *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

Plaintiff admits that, prior to March 2018, he was an independent contractor. Compl. ¶ 13. Therefore, the relevant period to consider is between March 2018 and July 18, 2022, when Plaintiff alleges his relationship with DG3 terminated. *Id.* ¶ 43. Plaintiff's opposition and sur-reply reiterate the Complaint's argument that discontinuing the "draw" payments converted him into an employee and add factual allegations in support of his argument that he was an employee after March 2018. Opp'n; Sur-reply.[7] However, Plaintiff alleges almost no facts in his Complaint that support the assertion that he was employed by DG3.

---

[7] The Court does not consider the additional factual allegations in Plaintiff's opposition and sur-reply because courts "do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under [Rule 12(b)(6)]." *Frederico v. Home Depot*, 507 F.3d 188,

Construing the Complaint liberally, as the Court must, Plaintiff perhaps alleges that his work was an integral part of DG3's business as he was awarded "DG3's prestigious '100% Club' recognition" for exceeding "100% of . . . forecasted printing sales," a "crucial metric, especially for a printing company which typically has a great deal of operating leverage and therefore must meet sales targets in order to be . . . viable." Compl. ¶¶ 20-21. But there are no other factual allegations that support Plaintiff's legal conclusion that he was employed by DG3 following March 2018. Plaintiff argues that because he was not paid "draw" payments after March 2018, as contemplated by the Agreement, that converted his status as an independent contractor to an employee. Opp'n at 2; Sur-reply at 2. However, Plaintiff does not explain the legal significance of this allegation and the Court cannot find any.

Indeed, Plaintiff alleges some facts that weigh *against* a finding that he was an employee following March 2018. For example, he alleges he was not reimbursed for mobile phone payments despite other salespeople being reimbursed for those expenses and that DG3 did not provide medical insurance and did not make 401(k) contributions. Compl. ¶ 28.

Because Plaintiff does not allege facts that, if true, show he was an "employee" under the FLSA, he fails to state a FLSA claim.[8]

### B.   The Court Declines to Exercise Supplemental Jurisdiction Over the New Jersey State Law Claims

Having dismissed Plaintiff's FLSA claim—the only claim "over which [the Court] had original jurisdiction"—the Court must decide whether to exercise supplemental jurisdiction over

---

201-02 (3d Cir. 2007) (citing *Commonwealth. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (cleaned up)).

[8] Because the Court finds that Plaintiff has not adequately alleged that he is an "employee" under the FLSA, it need not consider Defendants' argument that Babat is not an "employer" under the FLSA.

the remaining state law claims under the NJWHL and unspecified New Jersey common law claims. *Barry v. Pennsauken Bd. of Educ.*, No. 16-9230, 2018 WL 6332511, at *4 (D.N.J. Nov. 7, 2018) (quoting 28 U.S.C. § 1367(c)(3)). The Court declines to do so.

Typically, the Court "'must decline' to exercise supplemental jurisdiction in such circumstances [where no federal claims remain] 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Id.* at *8-9 (quoting *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017)). "Where the federal claims are dismissed at an early stage in the litigation," as is the case here, "courts generally decline to exercise supplemental jurisdiction over state claims." *Ezell v. JP Morgan Chase Bank Nat'l Ass'n*, No. 18-1407, 2020 WL 525899, at *7 (D.N.J. Jan. 31, 2020) (first citing *United Mine Workers v. Gibbs*, 383 U.S. 716, 726 (1966); then citing *Growth Horizons, Inc. v. Delaware Cnty.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993)). Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss Plaintiff's state claims without prejudice.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss will be **GRANTED** and the Complaint will be **DISMISSED** *without prejudice*. Plaintiff will have 45 days from the date of the Order accompanying this Opinion to amend his complaint to cure the deficiencies identified herein. Alternatively, if Plaintiff determines that the FLSA does not provide grounds for relief, he may attempt to pursue his state law claims in state court.

Dated: December 10, 2024

_____
Evelyn Padin, U.S.D.J.